should be greatly lessened, while the libelants claim that damages should have been allowed to the amount of $4,585.73.

HELD BY THE COURT: That upon the proofs there was strong evidence that whoever conducted the repairs of the brig attempted most unfairly to charge the steamboat with expenses well known to them not to have arisen from the injuries. The pretence under which the attempt was covered—that the underwriters were to pay the expense; and that the charges were put in beyond their just value to screen the owners from their share of contribution—no way lessens the dishonesty of the transaction. That the intention or even attempt of the libelants to practice a fraud upon the claimants, does not, in law, disable them from recovering the real value of the labor and materials bestowed upon the brig in giving her the repairs she required. That the sum of $900 be allowed for the repairs as reported by the commissioner, one witness having offered to make the repairs for that sum. But that it seems befitting in a court, proceeding in a good degree upon the principles of equity, to discountenance the attempt of the libelants to enforce a wrongful account against the steamboat, by denying interest on that sum, until that sum become fixed by the second report of the commissioner, filed December 4, 1854. That the demurrage must be cut down to eight days, as the libelants have left the point upon conflicting statements, when they could easily have rectified the estimate by testimony at their command. Decree, therefore, that the report of the commissioner be corrected in these particulars, and that the libelants have a decree for the sum of $1,121.22.

[NOTE. Both parties appealed from the decree, which was affirmed by the circuit court. The Sampson, Case No. 12,279.]

CRANE (UNION PAPER-BAG MACH. CO. v.). See Case No. 14,388.

CRANE (UNITED STATES v.). See Cases Nos. 14,886–14,888.

CRANE (WALKER v.). See Case No. 17,067.

### Case No. 3,358.
### CRANE v. WEYMOUTH.

[This is a state case, and is reported in 54 Cal. 476.]

CRANE (WOOSTER v.). See Case No. 18,036.

### Case No. 3,359.
CRANMER et al. v. GERNON.

[2 Pet. Adm. 390.][1]

District Court, D. Pennsylvania. 1807.

SEAMEN'S WAGES—CAPTURE OF VESSEL—PORT OF DELIVERY—BLOCKADE.

1. Claim of wages by seamen belonging to a ship which had been captured on her home-

[1] [Reported by Richard Peters, Jr., Esq.]

ward voyage. The port to which a vessel may proceed and land her cargo after being turned off from her port of destination in consequence of its being blockaded, to be considered the port of delivery.

2. When a cargo is purchased at several neighbouring ports and the vessel proceeds to each of them to receive it, the last port of lading is that to which wages should be paid.
[Explained in Thompson v. Faussat, Case No. 13,954. Criticised in Bronde v. Haven, Id. 1,924. Cited in Pitman v. Hooper, Id. 11,-186.]

The mariners had shipped to perform a voyage from Philadelphia to the Isle of France and to return to Philadelphia. The Baltic was detained a considerable time at the Isle of France, waiting for a cargo, which she could not obtain in consequence of the intercourse between Bourbon and the Isle of France being interrupted by a British blockading squadron. These difficulties continuing, the Baltic sailed for Bourbon, taking with her a very small part of her outward cargo and also a number of passengers, who with their baggage and a small quantity of sugar supposed to belong to them, were landed at Bourbon. The Baltic there completed her loading and sailed for Philadelphia, but was captured and sent into a British port in the West Indies. The seamen, with the consent of the master of the Baltic, left her and returned to Philadelphia, and now claimed their wages up to half the time the ship was at Bourbon, admitting that the residue would depend on the fate of the Baltic. By the counsel for the owner it was suggested that the voyage from the Isle of France to Bourbon was a consequence of the interruption of the intercourse between these places by the British squadron, and that it is not usual for vessels to proceed to Bourbon, as the produce of that place is, under other circumstances, brought up to the Isle of France in boats, and there put on board the ships destined to receive it. This was urged, with other arguments, to destroy the claims of the seamen to wages after the vessel left the Isle of France. The case was not decided, as the owner requested a postponement, for the purpose of ascertaining from the master of the Baltic, the sums which had been paid to the seamen; but the judge said he had decided that when a vessel bound to a port, which was found on her arrival near it to be blockaded, and therefore the ship had been turned off, and proceeded to another port, though not originally contemplated in the articles under which the seamen shipped, yet if the cargo, or any part, was there delivered, it should be considered as a delivering port as much as if originally so intended. And if the vessel, after leaving that port, was captured or lost, the mariners were entitled to the wages due to the time of arrival at that port, and for half the time of stay there.

It was also the opinion of the judge, and he said he had so decided, that where a cargo,